STATE, EX REL. MERVYN J. WARREN, APPELLANT, V. EMIL RAABE ET AL., APPELLEES.

299 N. W. 338

FILED JULY 11, 1941. No. 31115.

*Cowan & Grady, Abbott, Dunlap & Abbott, Gross & Crawford* and *Crofoot, Fraser, Connolly & Stryker,* for appellant.

*Fay H. Pollock* and *Robert R. Moodie, contra.*

Heard before SIMMONS, C. J., PAINE, MESSMORE and YEAGER, JJ., and CHAPPELL and POLK, District Judges.

SIMMONS, C. J.

Relator prays for a writ of mandamus directing that the respondents, within legal limits, proceed to levy taxes in an amount sufficient to pay certain warrants issued by the county of Stanton held by him. The respondents are the county of Stanton, its board of commissioners, and its board of equalization.

Relator alleges that he is the owner and holder of certain warrants issued by the county of Stanton in the aggregate sum of $92,838.75, and that he brings this action for him-

self and all others similarly situated; that during the years 1919 to 1922, inclusive, Robert Z. Drake, doing business as Standard Bridge Company, performed work and furnished materials and supplies to the county; that claims were filed, audited and allowed in the sum of $542,439.34 and warrants were issued therefor; that $441,019.31 of said warrants was paid by the county and $101,420.03 remains outstanding and unpaid; that in an action in the district court for Stanton county, October 2, 1922, wherein the Standard Bridge Company was plaintiff and the county and its board of commissioners were defendants, the validity of said warrants was an issue, and it was specifically adjudged that said warrants were valid obligations of the county; that all of said warrants were presented for payment, payment refused, and the warrants registered for payment; that levies were made and from the funds provided payments of said warrants were made in the order of registration; that the last payment was made in 1937; that plaintiff's warrants were not reached in the order of registration and not paid; that it is the duty of respondents to include said warrants in the annual estimates and to levy a tax in an amount sufficient to pay the interest and principal up to the statutory limit; that the respondents since 1938 have refused to perform said duty although sufficient time to do so has passed; that the county denies liability on said warrants remaining unpaid after having recognized the indebtedness and made payments thereon for over 20 years, during which time the warrants changed ownership from time to time in reliance thereon; that respondents have refused to take any action to provide funds for the payment of the warrants; that relator has no plain and adequate remedy in the ordinary course of the law, has suffered irreparable damage and will continue to suffer harm and damage if respondents are not compelled by mandamus to make the necessary estimates and levy the taxes up to the statutory limit to secure funds to pay the warrants.

After motion to quash and demurrer, respondents answered, challenging the right of relator to a writ of man-

damus, presented the issue as to whether or not relator has a plain and adequate remedy in the ordinary course of the law, admitted that no levy has been made for the purpose of paying the warrants held by relator and admitted that the county denies liability on the warrants held by the relator, and denied that he has suffered, or will suffer, irreparable injury if the writ does not issue.

Respondents pleaded various provisions of our Constitution and statutes, including limitations on county indebtedness, and alleged facts relating to the assessed value of the property of the county, the amount of funds which could be produced by levies if made; that the warrants show on their face that they were issued for sums greatly in excess of the amount of the levy and that each of the warrants held by relator was for the payment of orders given under "Unit Price" contracts in excess and in contravention of statutory and constitutional limitations and when there were no funds legally available for payment thereof; that no emergency existed for the repair of the bridges for which the warrants were issued and that the law as to emergency repairs was not followed; that the county board has no authority to audit or allow the claims for which relator's warrants were drawn; that the warrants are void; that the contracts and orders for bridges in excess of legal limits were made and entered into pursuant to collusion and connivance between the then county board and Drake as evidenced by the unlawful allowance of claims and issuance of warrants, the manipulation of county records and by the acts of the commissioners in assisting and cooperating in the drafting of the pleadings in the action against the county, in failing to present defenses and in admitting liability of the county and validity of the warrants. The respondents further allege that the county was overcharged for the materials furnished and work done. By reason of these and other defenses, respondents contend that no levy may legally be made to pay the warrants.

Relator for reply denies generally, and further pleads that a suit was brought by taxpayers in 1922 against the

county and its officers to enjoin the collection of taxes to pay certain warrants, among them the ones involved in this action; that a demurrer to the petition was sustained and the action dismissed; that subsequently another taxpayer's action was brought to restrain the payment of these warrants and to have them declared illegal and void; that demurrers to said petition were sustained and the action dismissed; that an appeal was taken to this court and here said action dismissed by stipulation of the parties, wherein the county was benefited by a credit upon a judgment of the Standard Bridge Company against it; that the county, since 1922, has had knowledge of all these matters, retained the benefits thereof, used the bridges, made levies to pay a large part of the warrants and is now estopped to deny their validity and to refuse payment; that the taxpayers' suits constitute an adjudication of the validity of the warrants; that the relator, knowing of this history of the warrants and relying thereon, was lead to believe that the warrants would be paid; and that the respondents are guilty of laches and should not be permitted to question the validity of the warrants or said litigation and that the statute of limitations prevents the respondents from asserting the invalidity of said warrants and said judgments.

The three pleadings just reviewed, together with exhibits, comprise some 200 pages of the transcript.

The evidence, largely documentary, is equally voluminous. The trial court denied the writ of mandamus for which relator prayed. Relator appeals.

The question first presented is, "Is mandamus a proper remedy?"

The relator's contention that he has no adequate remedy at law is based on the general situation presented by the pleadings and the evidence, rather than upon any particular fact, either alleged or proved.

The warrants held by the relator are in the nature of promises to pay. It is patent that relator has not secured a judgment upon his warrants in a court of competent jurisdiction in this state. The county denies the validity of the

warrants and its liability thereon. Relator's position is that the facts pleaded, and, he contends, proved entitle him to the writ.

The applicable provisions of our statute are as follows: "The writ of mandamus may be issued * * * to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station." Comp. St. 1929, sec. 20-2156. "This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law." Comp. St. 1929, sec. 20-2157. "Whenever any judgment shall be obtained in any court of competent jurisdiction in this state for the payment of a sum of money against any county * * * it shall be the duty of the county board * * * to make provisions for the prompt payment of the same." Comp. St. 1929, sec. 77-1809. "If the amount of revenue derived from taxes levied and collected for ordinary purposes shall be insufficient to meet and pay the current expenses for the year in which the levy is made, and also to pay the judgment remaining unpaid, it shall be the duty of the proper officers * * * to at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments." Comp. St. 1929, sec. 77-1810. "If any such corporate authorities, whose duty it is, under the provisions of this article, to so levy and collect the tax necessary to pay off any such judgment, shall fail, refuse, or neglect to make provisions for the immediate payment of such judgments, after request made by the owner or any person having an interest therein, * * * he or they having such interest may apply to the district court of the county in which the judgment is obtained * * * for a writ of mandamus to compel the proper officers to proceed to collect the necessary amount of money to pay off such indebtedness." Comp. St. 1929, sec. 77-1813.

The statutes last above cited (Comp. St. 1929, secs. 77-1809, 77-1810, 77-1813) were before the circuit court of appeals, eighth circuit, in *United States v. Saunders*, 124 Fed. 124, wherein it was said (p. 126): "In the enforcement of judgments of the national courts against municipal

and quasi municipal corporations, the writ of mandamus is the legal substitute for the writ of execution to enforce judgments against private parties." See, also, *Village of Oshkosh v. State of Nebraska,* 20 Fed. (2d) 621.

In *Snower v. Hope Drainage District,* 2 Fed. Supp. 931, the court said (p. 933) : "The writ of mandamus is the substitute for the writ of execution when the judgment debtor is a municipal corporation." It is a proceeding "in the nature of an execution to enforce satisfaction." *Carter County v. Schmalstig,* 127 Fed. 126.

In 58 A. L. R. 122, the rule is stated: "As a rule a judgment for a debt is a prerequisite to any proceeding by mandamus to compel a levy and collection of a tax for the payment of the debt."

"The writ of mandamus, when so issued, is the final process of the court for the enforcement of its judgment, and performs, in substance and effect, the office of a writ of execution." 4 Dillon, Municipal Corporations (5th ed.) 2695.

"We have seen that it is a general rule, relating to the writ under consideration, that it will not lie if there be a plain and complete remedy by the ordinary processes of the law; and this principle has been applied to the mode of compelling municipal corporations to meet their liabilities and obligations. Therefore, it has been generally, but not uniformly, held, if the creditor may bring suit against the corporation and obtain a judgment, which may be enforced and rendered effectual by ordinary execution, that mandamus will not lie to compel payment, in advance of judgment recovered; and this view, under the conditions just stated, is the one most consistent with principle, when the matter stands wholly unaffected by legislation. When judgment is rendered, and there is no property subject to execution out of which it can be made, mandamus will lie, and is the proper remedy, to compel the levy and collection of the necessary tax to pay the judgment. When the claim is reduced to judgment, the duty to provide for its payment becomes perfect, and if it can be paid in no other way, it

must be done by the levy and collection of a tax for that purpose, and this duty will be enforced by mandamus." 4 Dillon, Municipal Corporations (5th ed.) 2675. This court followed the above rule in *State v. Knievel*, 5 Neb. (Unof.) 219, 97 N. W. 798.

That the allowance of a claim by a county board is not a judgment within the meaning of the statute under consideration is clearly established by the holding of this court in *Custer County v. Chicago, B. & Q. R. Co.*, 62 Neb. 657, 87 N. W. 341. This court there held "that the existence of judgments against the county at the time of the levy is a condition precedent to a valid exercise of the power by the county board to levy a tax for the payment of judgments." That being true, the existence of judgments is likewise a condition precedent to "a writ of mandamus to compel the proper officers to proceed to collect the necessary amount of money to pay off such indebtedness."

The statute clearly contemplates that the fact of the indebtedness, upon which the duty to levy the tax is based, must be determined in a prior action. Here the relator proposes that the duty to pay the tax shall be determined in the mandamus action, without the prior adjudication of the indebtedness contemplated by the statute.

If, as relator alleges, and, as he contends, has proved, the warrants held by him are based upon claims duly audited and allowed and the county is indebted to him, and is under a legal obligation to pay him the amount due upon his warrants, then it is clear that he may maintain an action at law to recover a money judgment against the county. *Ayres v. Thurston County*, 63 Neb. 96, 88 N. W. 178. He has, therefore, an adequate remedy in the usual course of the law. "It is the general rule in all courts that mandamus cannot be used when there is a complete and adequate remedy provided by statute." *State v. Morehead*, 101 Neb. 37, 161 N. W. 1040.

Were these warrants the promise of a private individual, it is patent that execution could not issue to enforce their payment, unless and until judgment were secured. Man-

damus as a substitute for execution should not issue upon them.

To authorize the issuance of the writ, relator relies upon the decision in the cases of *State v. Buffalo County,* 6 Neb. 454; *State v. Cather,* 22 Neb. 792, 36 N. W. 157; *State v. Weir,* 33 Neb. 35, 49 N. W. 785; *State v. Board of County Commissioners of Cass County,* 53 Neb. 767, 74 N. W. 254; *State v. Farrington,* 80 Neb. 628, 114 N. W. 1100. These will be considered in the order given.

(1) *State v. Buffalo County, supra,* states the rule: "When a claim against the county is finally adjudicated, and the law clearly provides for the levy of a tax to pay such claim, and the board of county commissioners refuse to levy such tax, the remedy is by mandamus to compel the levy of the tax, and not to subject the county to costs of litigation for the neglect of its officers." It will be noted in the *Buffalo County* case that the allowance of relator's claim and the validity of the contract upon which it was based had been previously adjudicated by a decision of this court. While it appears that the warrants had not been put in judgment, it seems clear that the defenses of the county had been adjudicated.

(2) *State v. Cather,* 22 Neb. 792, 36 N. W. 157, finds that "It is the duty of the county board to provide for what is due." A peremptory writ issued requiring the board to estimate the amount due and at the proper time levy taxes for the payment of the same. The original briefs in the above case are not available. An examination of the cases cited in the headnotes reveals the following regarding the cases cited by the relator: *State v. Dodge County,* 10 Neb. 20, 4 N. W. 370, by the provisions of the statute under which the bonds were issued, "no judgment at law * * * is contemplated," for it was made the duty of the commissioners to levy and cause the tax to be collected, and the act provided that they might "be compelled by mandamus to do so." *State v. Lancaster County,* 13 Neb. 223, 13 N. W. 212, decided only a question of procedure on appeal. *Lancaster County v. State,* 13 Neb. 523, 14 N. W. 517, was an application for a

writ to compel county commissioners to act upon a claim. The respondent cited the provisions of the statute allowing appeals to the district court from disallowed claims. It is obvious that this court did not determine in the *Cather* case the question we are now considering.

(3) *State v. Weir*, 33 Neb. 35, 49 N. W. 785, was an application for a writ to compel county commissioners to include in the estimate of expenses certain audited and allowed claims and to levy and collect a tax to pay the same. No appeal was taken from the allowance of the claims and their justness was not questioned. A writ was issued requiring the commissioners to include the claims in the estimates and at the proper time levy a tax to pay the same. The briefs in that case reveal that the respondents presented, as the question to be determined, the necessity of meeting the current expenses of the county before it could be compelled to pay "debts already incurred." That was the question primarily considered by this court. The matter now being considered was not determined, although the statute regarding mandamus in case a judgment was not paid, heretofore discussed, was cited.

(4) The decision in the *Cass County* case merely held that a peremptory writ would issue in favor of one who had conclusively established the right to have a warrant issued for an allowed claim. It does not involve nor decide the question now presented.

(5) In *State v. Farrington*, 80 Neb. 628, 114 N. W. 1100, a writ of mandamus was asked commanding the defendants to revise their estimates and levy and to include therein an amount sufficient to pay the claims of the relator. Clearly the claims had not been reduced to judgment. On appeal to this court relator contended, and briefed at length, that mandamus was a proper remedy. As the opinion states, respondents contended that there had been no valid allowance of the claims and that relator's cause was barred by the statute of limitations. Respondents briefed those propositions and paid little if any attention to relator's contention that mandamus was a proper remedy, except as it related to

the statute of limitations. This court held: "The allowed claims stand in the character of a judgment against the county, imposing on it a continuing duty to make payment." The cause was reversed, with directions to issue the writ. The cause was again before this court on a second appeal in 86 Neb. 653, 126 N. W. 91. Upon this second appearance respondents briefed and argued their contention that "the relator is not entitled. to a writ of mandamus because his claims have not been reduced to judgment." To this contention relator in his brief answered that "it should have been presented in a motion for a rehearing on the former appeal." This court said that this question was "directly involved in the former appeal and determined against the respondents" and that the respondents were evidently satisfied with the opinion because they did not ask for a rehearing. Respondents urged this court to reexamine the questions involved in the former appeal and correct any manifest error therein. Discussing that proposition generally this court said: "The erroneous decision may be overruled and disregarded in subsequent litigation between other parties, but between parties to the suit and their privies it is the law and measures their rights and duties." It is obvious that this court, in the opinion just discussed, did not close the door to a further consideration of this problem.

We find nothing in our former holdings which prevents the statement of a sound rule, consistent with our statutes, to be followed in cases such as the one at bar.

It is not necessary to discuss or decide the other matters presented in the appeal. The judgment of the trial court denying a writ of mandamus, as prayed by the relator, is affirmed for the reasons here stated.

AFFIRMED.