STATE OF NEBRASKA, EX REL. A. S. CHURCHILL, AT-TORNEY GENERAL, v. JOHN T. HAY, INCUMBENT, AND LUTHER J. ABBOTT, CLAIMANT.

FILED JUNE 18, 1895.    No. 7767.

1. **Statutes:** REPEAL BY IMPLICATION. A subsequent statute treating of a subject in general terms, and not expressly contradicting the more positive provisions of a prior special act, will not be construed as a repeal by implication of the latter if any other reasonable construction can be adopted.

2. **State Officers:** HOSPITAL FOR INSANE: REMOVAL OF SUPER-INTENDENT. The provision of section 7, article 7, chapter 83, Compiled Statutes, for the hearing by the board of public lands and buildings of charges against certain officers is cumulative only, and was not intended as a repeal of the prior provision for the removal, by the governor for cause, of the superintendent of the hospital for the insane at Lincoln. (Sec. 11, ch. 40, Compiled Statutes.)

25

3. **Public Officers:** POWER OF GOVERNOR TO REMOVE. The power conferred upon the governor to remove certain public officers for cause is an administrative and not a judicial function, and orders made in the exercise of that power are not reviewable by the courts.

4. ——: ——: JURISDICTION OF COURT. The limit of judicial interference in such cases is to protect public officers, removable for cause only, in their right to a hearing upon specific charges.

5. ——: REMOVAL BY GOVERNOR: SUFFICIENCY OF FINDINGS. Certain findings examined, and *held* to sustain the order based thereon removing the respondent from the office of superintendent of the hospital for the insane at Lincoln.

ORIGINAL action in the nature of *quo warranto*, on the relation of the attorney general, to determine which of the respondents is entitled to hold the office of superintendent of the hospital for the insane at Lincoln. *Judgment of ouster against incumbent.*

The facts are stated in the opinion.

*A. S. Churchill, Attorney General,* for the state.

*M. B. Reese, C. Hollenbeck* and *J. W. C. Abbott,* for respondent Luther J. Abbott:

The power exercised by the governor in hearing charges against respondent Hay and in removing him from office was administrative and not judicial. (*State v. Hawkins,* 44 O. St., 98; *State v. Oleson,* 15 Neb., 247; *Minkler v. State,* 14 Neb., 181; *State v. Supervisors of Saline County,* 18 Neb., 422; *State v. Sheldon,* 10 Neb., 453.)

The governor had the power to remove the incumbent for cause, and that power was not taken away by the power given the board of public lands and buildings to hear charges and report the evidence and their conclusion to the governor. (*State v. Smith,* 35 Neb., 13.)

Whenever a power is given by statute everything necessary to make it effectual or requisite to attain the end, is implied. (Sutherland, Statutory Construction, sec. 341.)

Repeal by implication is not favored. An act will not be held to repeal a former act unless the repugnancy between the two is plain and unavoidable. (*Lawson v. Gibson*, 18 Neb., 137; *State v. Babcock*, 21 Neb., 599; *Hopkins v. Scott*, 38 Neb., 661.)

It does not require a judicial process to declare an office vacant. (*Conner v. Mayor of New York*, 5 N. Y. 285.)

The governor has power under the statute to remove any appointive officer after a hearing of charges. (*Keenan v. Perry*, 24 Tex., 253; *Wilcox v. People*, 90 Ill., 186; *People v. Higgins*, 15 Ill., 110; *State v. Doherty*, 25 La. Ann., 119; *State v. Hawkins*, 44 O. St., 98; *City of Hoboken v. Gear*, 27 N. J. Law, 265; *People v. Whitlock*, 92 N. Y., 191; *State v. McGarry*, 21 Wis., 496; *Trimble v. People*, 34 Pac. Rep. [Col.], 981.)

*Webster, Rose & Fisherdick*, for respondent John T. Hay:

The governor has no original jurisdiction under the constitution or the statute to receive, entertain, or hear charges against any officer of the insane hospital or of any other of the state institutions placed under control of the board of public lands and buildings. (Mechem, Public Officers, secs. 103, 104, 110, 446–448, 455; *State v. Seavey*, 22 Neb., 454; *State v. Smith*, 35 Neb., 33; *Lease v. Freeborn*, 35 Pac. Rep. [Kan.], 817; *People v. Freese*, 76 Cal., 633; *Carr v. State*, 111 Ind., 101; *People v. Weber*, 86 Ill, 285; *Marbury v. Madison*, 1 Cranch [U. S.], 174.)

The governor's jurisdiction in respect to the hearing of charges—granting he has such—is concurrent with that of the board of public lands and buildings, and being judicial and not executive in character, may be challenged and his competency to give an impartial hearing inquired into. (*Stockwell v. Township Board of White Lake*, 22 Mich., 344; Cooley Constitutional Limitations, 413; *State v. Crane*, 36 N. J. Law, 399.)

The evidence considered by the governor,—*ex parte* affi-davits, and records and reports not disclosed to defendant or opportunity given to him to examine, rebut, or explain,— was incompetent, and no conviction or judgment founded on proceedings in which such evidence was considered should be permitted to stand. (*State v. Bryce*, 7 O., 416 ; *Andrews v. King*, 77 Me., 233 ; *Dullam v. Willson*, 53 Mich., 414 ; *People v. Nichols*, 79 N. Y., 588 ; *Murdock v. Trustees of Phillips Academy*, 12 Pick. [Mass.], 244.)

Defendant was wrongly required before the governor to take the burden of proof, and presumed guilty till he should, to the governor's satisfaction, show he was not guilty. This is itself sufficient to render the conclusion arrived at a mere nullity. (*Dullam v. Willson*, 53 Mich., 413; *Larkin v. Noonan*, 19 Wis., 99; *Andrews v. King*, 77 Me., 233; *In re Eaves*, 30 Fed. Rep., 26.)

The nature of the governor's action being not in his executive or political capacity, but in a judicial one, and affecting a right, is subject to judicial review, not only as to his jurisdiction, but also as to the regularity of his pro-cedure and the fairness and validity of the proceedings themselves to sustain a judgment of amotion. (*Marbury v. Madison*, 1 Cranch [U. S.], 163; *Page v. Hardin*, 8 B. Mon. [Ky.], 655; *Dullam v. Willson*, 53 Mich., 409; *Commonwealth v. Fowler*, 10 Mass., 302; *State v. Chase*, 5 O. St., 534; *In re Nichols*, 57 How. Pr. [N. Y.], 396.)

The charges themselves are insufficient to constitute mal-feasance in office or other good and sufficient cause for re-moval, and are insufficient to require respondent to answer to; and the governor's findings are insufficient to justify or sustain a removal from office. (*State v. McGary*, 21 Wis., 498; *State v. Lazarus*, 39 La. Ann., 161; *Coite v. Lynes*, 33 Conn., 115; *In re Nichols*, 57 How. Pr. [N. Y.], 396; *Dullam v. Willson*, 53 Mich., 407.)

Post, J.

This is an original proceeding in the nature of a *quo warranto*, on the relation of the attorney general, under the provisions of section 714 of the Civil Code, for the purpose of determining which of the respondents is entitled to the office of superintendent of the hospital for the insane at Lincoln.    The questions we are called upon to decide are all presented by the pleadings of the respondents, hence further reference to the information will not be required in this opinion.    It appears from the pleadings that the respondent Hay, hereafter referred to as Dr. Hay, was by Hon. Lorenzo Crounse, governor, appointed to the office in dispute, his appointment taking effect April 1, 1893. The authority for such appointment is found in section 10, chapter 40, Compiled Statutes, as follows : "The governor of the state shall appoint a superintendent and may appoint two assistant physicians for the hospital of the insane, one of whom shall be a woman, who shall hold their offices for a term of six years, unless sooner removed as hereafter provided."    It is by section 11 of said chapter further provided : "The superintendent of said institution shall be a physician of acknowledged skill and ability in his profession, and be a graduate of a regular medical college. He shall be the chief executive officer of the hospital, and shall hold his office for the term of six years, unless sooner removed by the governor for malfeasance in office, or other good and sufficient cause."    On the 20th day of April, 1895, Hon. Silas A. Holcomb, governor, caused to be served upon the respondent above named the following notice:

"Lincoln, Neb., April 20, 1895.

"*To J. T. Hay, M. D., Hospital for the Insane, Lincoln, Neb.*—Sir: I beg to hereby notify you that information and complaints in the nature of charges have been presented to me affecting your management of the hospital for the insane at Lincoln, Nebraska, over which you have

heretofore had control as superintendent, specified as follows:

"1. That the management of said hospital while under your control has been extravagant, costing the taxpayers of the state a much greater sum of money than like institutions similarly situated in adjoining states.

"2. That as superintendent of said hospital you have grossly neglected your duty in permitting and allowing your subordinates and employes to wantonly and cruelly assault, abuse, and maltreat the patients in said hospital for treatment.

"3. That you have been negligent in your duties, in absenting yourself from said hospital while the assistant physician therein was also absent.

"4. That you have been guilty of misconduct in office by attempting to influence your employes and subordinates from giving testimony in the courts of justice and by attempting to induce them to withhold facts and thereby defeat the ends of justice when criminal proceedings were being tried in the courts involving certain persons in defrauding the state out of large sums of money.

"5. That you have not properly, or in a suitable manner, treated the patients entrusted to your care for mental diseases with which they have been afflicted, but on the contrary you have grossly neglected to treat such patients and have thereby greatly impaired the usefulness of said hospital as a place for the treatment of the insane.

"6. That under your administration of said hospital patients therein have been frequently assaulted and abused in an unnecessary manner and thereby bringing scandal and disgrace upon said institution.

"7. That the management of said hospital by you as superintendent has been wasteful and extravagant, incompetent and inefficient.

"You are required to appear at my office April 30, A. D. 1895, at 2 P. M., and to show cause, if any you have,

why you should not be removed from the said office of superintendent for said institution.

"SILAS A. HOLCOMB,
"*Governor.*"

On appearing before the governor in response to the foregoing citation Dr. Hay interposed certain objections to the proceeding, which will be hereafter noticed, and which having been overruled, a hearing was had, resulting in the following finding and order:

"STATE OF NEBRASKA,
"EXECUTIVE OFFICE, LINCOLN, May 18, 1895.

"*J. T. Hay, Hospital for the Insane, Lincoln, Neb.*—SIR: I beg hereby to inform you of the conclusions reached by me in the matter of the investigation of the management of the Nebraska hospital for the insane at Lincoln during the period of your incumbency as superintendent.

"1. From the investigation made by me I find that during the management of the hospital for the insane by you the expenses of maintaining the patients have been greater than necessary, and that there has not been that degree of economy exercised which the taxpayers of the state have the right to expect from those employed in the public service.

"2. Also, that the attendants employed by you and under your control have wantonly and unnecessarily abused and maltreated patients in your charge, and that the patients have not been given that kindly care and treatment from those having them in charge which by reason of their unfortunate condition they should receive.

"3. Also, that the medical treatment of patients, especially in the violent ward known as the third ward, has not been modern nor in accordance with what experience has demonstrated to be best for patients in hospitals for the insane, in this: The administration of sedatives and narcotic drugs by yourself, your assistants and attendants, had a harmful effect upon the patients committed to your care. The administration of such drugs in the quantities given

at the Nebraska hospital for the insane at Lincoln, Nebraska, under your superintendency, are not warranted by the experiences of other institutions of the same character, in this : The clinical records of the hospital over which you have had the supervision disclose that you have relied upon sedatives, narcotics, hypnotic drugs to accomplish results which could better be obtained by the use of other and less dangerous methods ; especially do the records of your institution show the extensive employment by you and under your direction of the hypnotic paraldehyde, a drug dangerous to life when administered frequently and in large doses ; and also, you have carelessly and negligently permitted attendants at the hospital to administer such narcotic, hypnotic, and sedative drugs to patients under your charge at frequent intervals, and in large doses, at the discretion of the attendants, without the express prescription or direction of one of the physicians in charge of said hospital, and without specific directions so to do.   That there has not been exercised that degree of care, caution, and skill in the management of the hospital which should obtain in such an institution and which is necessary to secure in order that the hospital may be conducted economically and the patients receive the care and attention necessary for their bodily comfort and proper professional treatment looking toward their recovery.

"For the causes above mentioned it is hereby ordered that you be and are hereby removed as superintendent of said hospital, and you are hereby relieved of any further authority or duty as such superintendent.

"SILAS A. HOLCOMB,
"*Governor.*"

On the day last named Luther J. Abbott, hereafter referred to as Dr. Abbott, was by the governor appointed superintendent of the hospital, *vice* Dr. Hay, removed, and has qualified himself therefor by giving bond and taking the requisite oath of office.   Both respondents are eligible

to the office, and the questions argued all relate to one inquiry, viz., the legality of the order of the governor removing Dr. Hay.

The first proposition to which we will give attention is that exclusive jurisdiction has by statute been conferred upon the board of public lands and buildings to take cognizance of and hear charges against officers of the class including the superintendent of the hospital for the insane. The basis of that contention is section 7, article 7, chapter 83, Compiled Statutes, which reads as follows: "It shall be the duty of the board to take cognizance of all charges or complaints made against the said public officers, and at a regular meeting to give an impartial hearing to such charges and the defense against them, if any, and report the charges, evidence, and their conclusions in the matter to the governor within six days after the determination of such investigation." This act was approved February 13, 1877, while the act for the government of the hospital for the insane was approved March 13, 1873. In *Jackson v. Washington County*, 34 Neb., 680, it was said that a subsequent statute treating of a subject in general terms, and not expressly contradicting the more positive provisions of a prior special act, will not be construed as a repeal by implication of the latter if any other reasonable construction can be adopted. The later act must, in the light of that rule, be construed as cumulative and embracing charges and complaints of parties aggrieved by the alleged misconduct of the officers therein contemplated. It was, in brief, designed for the benefit of the public at large, to afford a summary remedy in certain cases for misconduct in office, and not as a limitation upon the executive prerogative conferred by the act of 1873.

· The question to which most prominence is given in the argument was suggested in *State v. Smith*, 35 Neb., 13, viz., whether the power of removal for cause of an officer holding for a fixed and definite term is judicial in the sense that

such officer is entitled to have the question of cause determined by the courts in the first instance or by appropriate appellate proceeding. The conclusion reached, although not expressed in the case cited, was that such power is in its proper sense an administrative rather than a judicial function, and that orders made in the exercise thereof are not reviewable by the courts; and a re-examination of the subject at this time has confirmed that conclusion. A review of the cases cited in support of the conflicting views upon this question is deemed unnecessary in this connection. It is sufficient that the conclusion above stated is in accord with the decided weight of authority and supported by the more satisfactory reasoning. (See *State v. McGarry*, 21 Wis., 496; *State v. Prince*, 45 Wis., 610; *Keenan v. Perry*, 24 Tex., 253; *State v. Doherty*, 25 La. Ann., 119; *Taft v. Adams*, 3 Gray [Mass.], 126; *Ex parte Wiley*, 59 Ala., 226; *Thompson v. Holt*, 52 Ala., 491; *State v. Hawkins*, 44 O. St., 98; *Donahue v. Will County*, 100 Ill., 94.) But the question cannot be regarded as an open one in this state. In *State v. Oleson*, 15 Neb., 247, it was held that the power of the county board to remove a sheriff for corruption in office, under the provisions of article 2, chapter 18, Compiled Statutes, is *quasi*-political and administrative in its nature, and not prohibited by the constitution. The doctrine of that case was expressly recognized and affirmed in *State v. Saline County*, 18 Neb., 422. We can perceive no difference in principle between those cases and that before us, since the question involved therein was the nature of the power conferred and not the person to whom it is entrusted. Speaking of the cases which assert the opposing view it may be said that, as a rule, they rest upon the assumption that the incumbent has a property right in the office he holds. Such, although the doctrine of the common law has no foundation whatever in a representative government where the right to hold office is a mere privilege.

(*Conner v. Mayor of New York*, 5 N. Y., 285; *State v. Hawkins, supra*.)    The limit of judicial interference in all such cases is that indicated in *State v. Smith, supra*, viz., to protect the officer in his right to a hearing on specific charges; or, in other words, to require the officer or body claiming the right of removal to keep within his or its jurisdiction.

An allegation of the answer of Dr. Hay which should be noticed in this connection is that Governor Holcomb was incapable, on account of bias and prejudice, of giving said respondent an impartial hearing.    What has already been said is a sufficient answer to that contention.    But there are other considerations which lead to the same result, the first of which is that there is in the record no apparent foundation for the charge, and second, the motives of the chief executive officer of the state in the discharge of his duty as such are not the subject of inquiry in this proceeding.    Criticism, in our opinions, upon the official conduct of the head of a co-ordinate department of the state government would be as indecorous and unjudicial as reflections upon this court in a state paper by the governor would be undignified and unstatesmanlike.

It is urged by Dr. Hay that "the charges themselves are insufficient to constitute malfeasance in office, or 'other good and sufficient cause for removal,' and are insufficient to require the respondent to answer, and the governor's findings are insufficient to justify or sustain a removal from office."    We quite agree with counsel that the governor is not by the terms of the act here involved invested with arbitrary powers.    The language "other good and sufficient cause" should be held to mean causes of like nature and affecting the competency or fitness of the respondent for the position he holds, or, in the words of Judge Dixon, construing a similar statute in *State v. McGarry, supra*, "the cause must be one which touches the qualifications of the officer for the office, and shows that he is not a fit or proper person to perform the duties."

We shall not examine *seriatim* the findings of the governor. The statement therein that the expenses of maintaining the hospital for the insane have been greater than necessary, and that the degree of economy in its management has not been such as the taxpayers have a right to expect, is in the nature of a conclusion, and probably too indefinite to sustain an order of removal, since it does not appear therefrom that Dr. Hay is directly responsible for such extravagance. Expenditures for the maintenance of our state institutions are largely controlled by the board of purchase and supplies, composed of the governor, commissioner of public lands and buildings, and secretary of state, and for whose mismanagement the superintendent of the hospital for the insane is in nowise responsible. But the second and third findings relate to matters within the jurisdiction of the respondent, and directly involve his management of the hospital. They are certainly responsive to the issues presented by the charges, and sufficient in law to sustain the order based thereon. We shall not argue to prove that the wanton abuse of patients committed to such institutions is cause for removal under the law of this case; and it is wholly immaterial whether such abuse be in the way of physical restraint of patients, or in permitting the giving by irresponsible attendants at their pleasure, without prescription or direction of the physicians in charge, of dangerous doses of narcotic or other drugs.

It follows that the order removing Dr. Hay is in all respects regular and binding, and that he has, since the date thereof, held the office in controversy without authority of law. It follows, too, that the appointment of Dr. Abbott invested the latter with a right to possession and the emoluments of said office, and that he is entitled to judgment on the pleadings. The proper writ will accordingly be allowed for the purpose of putting him in possession. Judgment of ouster against the respondent Hay in favor of the respondent Abbott.

JUDGMENT OF OUSTER.