Mathews v. Hedlund.

J. T. MATHEWS, APPELLANT, v. A. E. HEDLUND ET AL., APPELLEES.

FILED DECEMBER 5, 1908.    No. 15,350.

1. Physicians and Surgeons: REVOCATION OF LICENSE: REVIEW. An order made by the state board of health, under sections 9800 et seq., Ann. St. 1907, revoking for cause the license of a physician to practice medicine, surgery and obstetrics in Nebraska, may be reviewed in the district court by error proceedings under section 580 of the code. Munk v. Frink, 75 Neb. 172.

2. Constitutional Law. Sections 9800 et seq., Ann. St. 1907, do not contravene section 15, art. III of the constitution of the state of Nebraska, nor are they repugnant to the fourteenth amendment to the constitution of the United States.

3. Physicians and Surgeons: REVOCATION OF LICENSE: PLEADING. In

a hearing before said board for committing a criminal abortion upon a pregnant woman, it is not necessary to allege or prove that she was in any stage of uterogestation, but simply that she was pregnant of a vitalized embryo or fœtus. *Munk v. Frink,* 81 Neb. 631.

4. ——: ——: CONDITIONS PRECEDENT. A trial and conviction in a competent court is not a condition precedent to the institution and prosecution of said proceedings.

5. ——: ——: REVIEW. In case the secretaries of the board refuse to issue supbœnas for witnesses for the defendant, or to compel witnesses to answer material questions propounded by him, or refuse to hear argument, that conduct will not be considered in the district court, unless the defendant requested the board to direct its secretaries to comply with defendant's requests, and said board improperly refused so to do.

6. ——: ——: CORRECTION OF RECORD. In case the secretaries and the board find against the defendant, but by mistake or oversight the record does not evidence their said action, said board has power to correct its record so that it will speak the truth, even though error proceedings are then pending in the district court.

7. ——: ——: AFFIDAVITS AS EVIDENCE. In contested proceedings for the revocation of a physician's license to practice medicine, it is witnin the discretion of the state board of health, and of its secretaries, to receive affidavits relating to relevant facts at issue in said hearing.

8. ——: ——: REVIEW. In said proceedings, if it appears that the state board of health has acted within its jurisdiction, and that all of the jurisdictional facts essential to uphold its final order are sustained by some evidence competent for that board to consider, its orders will be upheld in error proceedings to the district court, and on appeal to this court.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*John O. Yeiser and W. W. Slabaugh,* for appellant.

*William T. Thompson, Attorney General,* and *Halleck F. Rose, contra.*

ROOT, C.

Appeal from a judgment of the district court for Lancaster county affirming the action of the state board of

health in revoking defendant's license to practice medicine, surgery and obstetrics in Nebraska.

1. The state board of health has filed a motion to dismiss this case for want of jurisdiction of the court to review said order in error proceedings. The argument of counsel, although forceful and learned, urges no better reasons in favor of his client's contention than were presented in *Munk v. Frink,* 75 Neb. 172, wherein the identical point was considered and decided against said board. We are asked to overrule *Munk v. Frink, supra,* for the alleged reasons that the board is not inferior in jurisdiction to the district court; that in said proceedings it exercises administrative functions only, and that its orders may not be reviewed by petition in error. It is conceded by counsel, and doubtless it is the law, that the legislature may provide for a review in court of the orders of administrative boards. The organic act creating the territories of Nebraska and Kansas vested the judges of the district court with chancery and common law jurisdiction. Ann. St. 1907, sec. 211. The territorial legislature in 1855 adopted parts of the then Iowa code to regulate the procedure of courts in Nebraska. Section 545, p. 39, 1 Complete Session Laws of Nebraska, 1855-1865, provided that whenever specially authorized by law, and also in all cases where an inferior tribunal or officer exercising judicial functions is alleged to have exceeded their proper jurisdiction, or is otherwise acting illegally, the writ of certiorari might issue. In 1858 the territorial legislature enacted a very comprehensive code of civil procedure and therein abolished writs of error and certiorari. Code, 1858, sec. 539. It is also provided in section 520 of said code that a judgment rendered or final order made by a county court, justice of the peace, or any other tribunal, board or officer, exercising judicial functions, and inferior in jurisdiction to the district court, might be reversed, vacated or modified by the district court. In the constitution of 1866, and that of 1875, the district courts were by the people given common law and chancery juris-

diction, and the cited sections of the 1858 code were carried into and made part of our present code. In *Traphagen v. Township of West Hoboken*, 39 N. J. Law, 232, in an elaborate and well-reasoned opinion, it was held that the legislature could not deprive a court vested with common law jurisdiction of the power to review by certiorari the action of statutory tribunals, unless an adequate remedy was substituted. Section 901 of the code provides that, in case said code does not furnish a procedure for the enforcement or protection of a right, or the redress or prevention of a wrong, the practice theretofore in use might be adopted to prevent a failure of justice. This is a copy of section 619 of the code of 1858.

In commenting upon this legislation, Mr. Justice Nor-VAL, in *Moline, Milburn & Stoddard Co. v. Curtis*, 38 Neb. 520, 532, reasons that a case might arise in Nebraska wherein the writ of certiorari could be issued. We are not advised that a district court in Nebraska has ever issued such a writ and the reason for this inaction, we are of opinion, is that section 580 of the code has furnished a sufficient remedy. It seems plain from a consideration of the organic act, the constitution and the codes that the people did not purpose to cut down the right of review in the courts, but rather intended that, in all cases where at common law the action of a special or statutory tribunal or inferior court might be reviewed by certiorari or writ of error, the losing party might prosecute error to the district court. Out of an abundance of caution, and apprehensive that the courts might not receive and interpret the code in the liberal spirit in which it was conceived, section 901, *supra,* was enacted. Recourse has not been necessary to the old common law remedy because the courts of Nebraska have accepted the spirit as well as the letter of the code. Under section 580, *supra,* the orders of a county board of equalization were reviewed by the district court, and later by us in *Sioux City & P. R. Co. v. Washington County*, 3 Neb. 30, 40. In *Minkler v. State*, 14 Neb. 181, the district court reviewed on error the ac-

tion of a board of county commissioners in removing a surveyor for misfeasance in office. Like proceedings were had in *Hopkins v. Scott*, 38 Neb. 661, where a county treasurer had been removed from office by the county commissioners. In *State v. Palmer*, 18 Neb. 644, Mr. Justice MAXWELL suggests that the order of a county superintendent changing the boundaries of a school district may be reviewed in the district court under section 580, *supra*. And in *State v. Scott*, 17 Neb. 686, we held that the action of the commissioner of public lands and buildings forfeiting the lease of school land for nonpayment of rent could be reviewed by error proceedings in the district court. In *Ayres v. Moan*, 34 Neb. 210, the orders of a board of county commissioners overruling a remonstrance, and calling a special election to locate a county seat, were reviewed by the district court under section 580, *supra*. It will therefore be observed that the personnel of the board is not a test of the jurisdiction of the courts to review the orders made, but rather the nature of the power exercised by that board. In the instant case the legislature selected three state officers and vested them with power to subpoena and examine witnesses, to take depositions according to the code, and to determine certain facts. While sitting as that special board, their functions approximate the judicial, and they are as well within the scope of section 580 of the code as were any of the officers referred to in the Nebraska cases cited, *supra*. The legislature has convened many times since the decision in *Sioux City & P. R. Co. v. Washington County*, *supra*, and it has not expressed its disapproval of our construction of section 580 of the code. Rather it will be noticed that, at the first session of the legislature subsequent to our decision in *Hopkins v. Scott*, *supra*, that neither a board of supervisors nor its presiding officer had authority to settle and allow a bill of exceptions, section 331 of the code was so amended as to authorize the presiding officer of any board to settle and allow such a bill. Thereby it seems to us the legislature

clearly indicated that in its judgment the courts had not exceeded their jurisdiction in the many and diverse proceedings reviewed by them under section 580, *supra.* We are safe in concluding that the legislative. branch of the government does not agree with counsel that the courts have usurped power in extending their jurisdiction to cases like the one at bar.

It is urged that one cannot have a property right in a license to practice. medicine; that. it is within the police power to name the conditions upon which such a permit shall issue and may be enjoyed, and that the holder thereof takes the privilege with the condition annexed that his license may be revoked at any time .by the power that gave it. There is much force in the argument, and many authorities may be cited to sustain it, but we are of opinion that after a license has been issued the right thereunder to practice medicine is a valuable right, and one that may not be taken away without good cause; that, if such license is canceled by a board of health, it must be upon proper charges, with opportunity to appear and defend by the introducing of evidence and the cross-examination of those witnesses who testify against the physician at the hearing. *Munk v. Frink,* 75 Neb. 172; *Hewitt v. State Board of Medical Examiners,* 148 Cal. 590; *Smith v. State Board of Medical Examiners,* 117 N. W. (Ia.) 1116. The hearing in the instant case did not involve the determination of the learning or.professional skill of the defendant, but whether he had performed a criminal operation upon the person of a patient. Under the circumstances of this case the revocation of defendant's license, as reasoned by Mr. Commissioner AMES in *Munk v. Frink, supra,* was analogous to a forfeiture and involved the exercise of judicial or *quasi* judicial power, within the meaning of section 580 of the code. *Board of Aldermen v. Darrow,* 13 Colo. 460, 16 Am. St. Rep. 215; *State v. Common Council,* 53 Minn. 238; *People v. Board of Police Commissioners,* 155 N. Y. 40; *People v. Hoffman,* 166 N. Y. 462; *College of Physicians & Surgeons v. Guilbert,* 100 Ia. 213. We

are of opinion that, in so far as *Munk v. Frink,* 75 Neb. 172, sustained the jurisdiction of the district court, it properly interpreted the legislative will, and is in harmony with our fundamental law. The motion to dismiss the appeal will be overruled.

2. Defendant argues that the statutes regulating the practice of medicine in Nebraska are void because they conflict with section 15, art. III of the constitution of Nebraska, and the fourteenth amendment to the constitution of the United States. It has been uniformly decided in numberless cases that the legislature may regulate the practice of medicine, and require practitioners to conform to those requirements, or in default thereof cease their practice; that subsequent legislation may impose greater burdens upon a physician, and that thereby he is not deprived of any privilege or immunity guaranteed by the constitution. Nor is it apparent to us, as suggested by counsel, that the inducement for the passage of said statutes was to exclude osteopaths or Christian scientists from practicing the art of healing. *Eastman v. State,* 109 Ind. 278, 58 Am. Rep. 400; *State v. Green,* 112 Ind. 462; *Dent v. West Virginia,* 129 U. S. 114.

3. Defendant asserts that the findings of the board of secretaries are insufficient to justify a revocation of his license. Neither the secretaries nor the board in the first instance entered any findings of fact upon their record, but later, after this case had been taken to the district court, corrected the record so that it recited that the charges' filed against defendant were true. No one can doubt from an inspection of the record that the board found that the charges made against defendant were true. Nor do we doubt the authority of that tribunal to make its records conform to the truth. *Olympian Tribune Publishing Co. v. Byrne,* 28 Wash. 79; *White v. Burkett,* 119 Ind. 431.

4. It is claimed that the complaint was insufficient, and furthermore that defendant's license could not be revoked until after his conviction in a criminal court. These ob-

jections must be resolved against defendant on the authority of *Munk v. Frink,* 81 Neb. 631, and *Edwards v. State,* 79 Neb. 251.

5. It is also insisted that there should be a reversal because of misconduct on the part of the secretaries in not issuing subpœnas requested by defendant, in refusing to compel witnesses to answer certain questions, and because members of the board refused to produce certain letters sent them concerning said transaction, also that said secretaries were biased against defendant, and that one of them, Dr. Bailey, is interested in the prosecution. As to all matters of practice defendant had ample remedy in applying to the board for an order to its secretaries, and the record does not disclose that he pursued that remedy. *State v. Moores,* 29 Neb. 122; *State v. Laflin,* 40 Neb. 441. There is no evidence that the board itself was guilty of any impropriety, and we are of opinion that defendant is not in position to complain. Furthermore, we do not think that the evidence warranted challenging the competency of Dr. Bailey to sit as one of the secretaries, or that it tended to show that he had any improper interest in the proceedings before the board.

6. It is also urged that the secretaries erred in admitting as evidence an affidavit made by the patient and purporting to contain a statement of the facts concerning the alleged criminal operation; that, had said affidavit been excluded, there would not have been any evidence to connect defendant with the alleged criminal act. The practice to be observed in cases like the one at bar is thoroughly discussed by Mr. Commissioner FAWCETT in *Munk v. Frink,* 81 Neb. 631. Within the rule therein announced the affidavit was competent evidence. Section 9803, Ann. St. 1907, which authorizes the secretaries to issue subpœnas and to take depositions and the testimony of witnesses is cumulative, and not intended to exclude other methods of proof in proceedings before them. Independent of the affidavit, there are many facts and circumstances as shown by the evidence that tend to connect

defendant with the act complained of.   It is true that he most strenuously denies such conduct, and that he is corroborated in many particulars by other witnesses.   However, in error proceedings prosecuted to the district court from a final order of the state board of health, the judgment should be affirmed if all of the jurisdictional facts were established by any competent evidence, even though opposed by other and weighty evidence.   In referring to the evidence as "competent" we mean evidence competent for that character of proceedings.

We are of opinion that, in substituting section 580 of the code for the earlier statutes concerning certiorari and writs of error, the legislature did not intend to destroy all distinction that plainly existed in the law between the character and extent of evidence sufficient to sustain the order of a board having *quasi* judicial power and that to uphold the judgment of a justice of the peace.   Any general statement on this subject contained in the opinion of Mr. Commissioner AMES in *Munk v. Frink*, 75 Neb. 172, must be considered in the light of the question that was presented and determined in that case, which was whether the district court had any jurisdiction in the premises. In the second appeal of said case, which was upon the merits (81 Neb. 631), Commissioner FAWCETT correctly stated the rule as to the weight of evidence essential to sustain a final order of the board of health, and his opinion is in harmony with our conception of the law.

We have carefully considered all of the evidence contained in the bill of exceptions, and are forced to the conclusion that there was competent evidence before the board to sustain all of the jurisdictional facts essential to uphold its order canceling defendant's license to practice medicine, obstetrics and surgery in Nebraska.   We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and CALKINS, CC., concur.

56

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.